UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ARSEN ABRAMYAN and NARINA ZAKHARYAN, | No. 2:16-cv-01069-MCE-AC |
|---|---|
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| GEICO INSURANCE COMPANY; and DOES 1-40, inclusive | |
| Defendants. | |

In bringing the present lawsuit, Plaintiff Arsen Abramyan ("Abramyan") and his wife, Plaintiff Narina Zakharyan (collectively "Plaintiffs"), allege that their automobile insurer, Defendant Government Employees Insurance Company ("GEICO") improperly denied a theft loss claim for a vehicle registered to Abramyan. According to GEICO, that denial was justified because various misrepresentations made by Abramyan in the course of asserting the claim voided coverage under the fraud provision contained in GEICO's policy. GEICO's rejection of Plaintiffs' claim, in turn, prompted them to bring the present lawsuit, which includes causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of California's Unfair Competition Law as codified by Business and Professions Code § 17200, et seq.

1

("UCL"), and violations of California's Unruh Act, California Civil Code §§ 51-52 ("Unruh Act").

GEICO now moves for summary judgment as to all causes of action currently asserted by Plaintiffs. Plaintiffs have indicated in response that they do not oppose dismissal of the UCL and Unruh Act claims as set forth in the Third and Fifth Causes of Action.[1] See Pls.' Opp'n ECF No. 34, at 4-10. Plaintiffs nonetheless assert that their First and Second Causes of Action, for breach of contract and breach of the implied covenant, respectively, should survive summary judgment. As set forth below, while GEICO's Motion is GRANTED as to the unopposed claims, it is otherwise DENIED as to Plaintiffs' remaining contract-based claims.[2]

**BACKGROUND**

At all pertinent times to this litigation, Plaintiffs were insured under a policy of automobile insurance, No. 4234-35-80-51, issued by GEICO. Def.'s Statement of Undisputed Fact ("SUF") No. 1. On July 20, 2013, Abramyan made a claim to GEICO for the alleged theft of his 2011 BMW 335i earlier that day. Id. at No. 2. Three days later, GEICO took a recorded statement by telephone from someone who appeared to identify himself as Abramyan. Then, on July 30, 2013, Abramyan submitted a partially completed theft loss questionnaire in which he reiterated that he paid cash for the BMW on or about March 15, 2012, but neglected to state how much he had paid for the vehicle, and from whom it had been purchased. Abramyan Decl., ECF No. 36, Ex. 3.

////
////

---

[1] Plaintiffs' Fourth Cause of Action, for unfair competition in violation of Cal. Ins. Code § 790, was already dismissed by Memorandum and Order filed March 10, 2017. ECF No. 16.

[2] Having determined that oral argument would not be of material assistance, the Court submitted the Motion on the briefs in accordance with E.D. Local Rule 230(g).

2

GEICO subsequently referred the claim to its Special Investigation Unit ("SIU")[3] "because in the initial recorded interview . . . the insured did not know basic facts about the history of the vehicle." Affidavit of John Coghlan, ¶ 7, ECF No. 24-4. SIU then obtained a second in-person interview of Abramyan on August 15, 2013. ECF No. 11. The SIU investigator who obtained that statement listened to the initial July 23, 2013 statement and believed the voices sounded different. Coghlan Aff., ¶ 10.

During his August 15, 2013, interview, Abramyan claimed that he had parked the BMW in front of his residence and had last seen it sometime after midnight on July 20, 2013 before discovering it missing around 10:00 a.m. that morning. Coghlan Aff., Ex. E, pp. 11-12. Abramyan stated this was his first claim filed with GEICO, that he had never had a car vandalized, and that he had not given anyone permission to call about this claim or the policy. Coghlan Aff., Ex. E, ECF No. 26-5, 6:15-18, 25:3-5, 26:26-8. He estimated he had paid something in excess of $24,000 for the BMW and had purchased the car from a dismantler who he could not identify. Id. at 30:24-31:6, 10:10-28 Abramyan also gave GEICO partial cell phone records, and the key fob. Coghlan Aff., ¶ 13. The key was defective and did not contain any information. Id. at ¶ 14. Abramyan's cell records showed a call was made to MGM Auto Dismantler the day before the loss, and that a call was made to Abramyan's phone at 2:23 a.m. on the night of the loss from his brother, Ghaspar Abramyan. Id. at ¶ 17; see also SUF No. 23.

On December 20, 2013 Abramyan gave a third statement, this time in the context of a formal Examination Under Oath ("EUO"). Although he initially denied authorizing any family member to give a statement on his behalf, he later admitted, when confronted by the tape recording, that he had asked his nephew Gevorg to speak on his behalf because he was nervous and because his English was not good. Coghlan Decl., Ex. F., 65:9-68:5; 69:12-19. Abramyan could not remember where he bought the BMW, although he believed it was from a dismantler and estimated he purchased the car for a

---

[3] According to GEICO, questionable claims, including claims where facts suggest that the claim may be suspect or potentially fraudulent, are referred to SIU for investigation. See Coghlan Aff., ¶ 4,

3

single $21,000 lump sum cash payment in exchange for a salvage title. Id., 24:22-25, 27:9-25. 36:20-25.

While Abramyan initially denied making or receiving a phone call after he went to bed on the evening of the loss, and could not recall a call placed from his brother at 2:23 a.m., his memory in that regard was refreshed once he was shown telephone records. Id. at 52:16-24. Abramyan denied, however, any recollection of having made a phone call to a number belonging to MGM Auto Dismantlers the day before the theft. Id. at 76:20-77:24.

Moreover, while Abramyan initially appeared to deny submitting any prior insurance claims, upon further questioning he admitted having made two others. Id. at 19:13-21:17. He did not recall, however, any prior vandalism claims. Id. at 25: 3-4. Nor did he remember previously suing anyone or being sued himself. Id. at 22:2-7.

SIU's investigation revealed that Abramyan had submitted not two, but eight prior insurance claims. SUF No. 48. He had also been a plaintiff in two lawsuits, and had been sued five times. Id. at Nos. 44-45. SIU's research indicated that Abramyan had been served in two of those lawsuits, which appear to involve credit card debt, during the same year that the subject theft claim was reported. Id. at Nos. 46-47. Based on those discrepancies and other inconsistencies concerning Abramyan's account of just what had transpired as discussed above, GEICO denied coverage for his theft claim by letter dated January 13, 2014. SUF No. 42, see Ex. 5 to Abramyan Decl., ECF No. 36. That denial letter delineated Abramyan's inability to recall how much he had paid for the BMW or where it was purchased. It also referenced Abramyan's inability to recall the incoming call made to his cell phone at 2:23 a.m., the morning of the theft, and the fact that Abramyan initially denied having his nephew Gevorg provide the initial recorded statement on July 23, 2013. Id.

GEICO's denial letter cited the following provision contained in the automobile policy it issued to Abramyan:

////

14. FRAUD AND MISREPRESENTATION

    Coverage is not provided to any person who knowingly conceals or misrepresents any material factor or circumstance relating to this insurance:

(a) at the time application is made; or

(b) at any time during the policy period; or

(c) in connection with the presentation or settlement of a claim.

GEICO Policy No. 4234-35-80-51, Section V, General Conditions, attached as Ex. 1 to Pl.'s Compl., Ex. A. to Decl. of Glenn M. Kenna, ECF No. 24-2.

    Plaintiffs initiated the present lawsuit on July 20, 2015, through a complaint filed in the Sacramento County Superior Court.[4] GEICO subsequently removed the action to this Court on May 19, 2016, citing diversity of citizenship pursuant to 28 U.S.C. § 1442 as the basis for federal jurisdiction. Discovery ensued, and it was revealed through Plaintiffs' Interrogatory Responses that Abramyan had admitted to both making insurance claims and being involved in prior civil actions when he initially applied for automobile insurance through GEICO. Decl. of Kevin W. Harris, ECF No. 36-1, Ex. 2, Nos. 45, 47.

    GEICO now moves for summary judgment on grounds that it properly denied coverage for Plaintiffs' theft loss claim under the fraud and misrepresentation policy provision delineated above, and that accordingly Plaintiffs' remaining claims for breach of contract and for breach of the implied covenant of good faith and fair dealing necessarily fail. Consistent with its denial letter enumerated above, GEICO asserts by way of its motion that that Abramyan's inconsistencies and misrepresentations in his recorded statements, examination under oath and loss questionnaire obviate coverage since his representations were both material and made with the intent to deceive. Moreover, according to GEICO, its reliance on those misrepresentations in denying the

///

---

[4] Plaintiffs have requested that the Court judicially notice, pursuant to Federal Rule of Evidence 201, Plaintiffs' initial complaint as well as other documents filed in state court. That request is unopposed and is GRANTED.

claim was reasonable under the circumstances, therefore precluding any claim for breach of the implied covenant of good faith and fair dealing.

In his Opposition to the Motion for Summary Judgement, Abramyan attempts to shed further light on whether he withheld information about the car purchase price, where he bought the car, and the details surrounding the loss.  First, with regard to his purchase of the BMW, he states that his best estimate was that he paid between $21,000 and $24,000 in cash for the car when he purchased it in March 2012 from an auto dismantler in Rancho Cordova, but was unsure which auto dismantler he purchased the car from.  Abramyan Decl., ECF No. 36, ¶¶ 8-11.  He further noted that it was not unusual in the Armenian community to pay cash for cars.  Id. at ¶ 2.  Additionally, according to Abramyan, he did not list the purchase price on the vehicle theft questionnaire because he did not remember it and did not think he needed to provide any other information besides what GEICO needed to determine the Kelly Blue Book value of the car.  Id. at ¶ 11.  Second, with regard to the fact that Abramyan had his nephew Gevorg provide the initial recorded statement in this matter on July 23, 2013, Abramyan reiterated that he asked Gevorg to speak on his behalf during the recorded statement because he was in shock and his English was not as good as Gevorg's ability in that regard.  Abramyan stated he was present during the call with Gevorg and at times interjected to correct his mistakes, a fact that was apparent from the recoding itself.  Id. at ¶ 7.  Third, with regard to his inability to remember that he had called MGM Auto Dismantlers the day prior to the theft, Abramyan maintains that he simply did not realize that MGM was the workplace of his daughter's fiancée, Edgar Araklyan.  Id. at ¶ 10. Fourth and finally, Abramyan attributes his failure to remember his prior insurance claims, lawsuits and incidents of vandalism to simply lapses in memory, pointing out that he had been given no documents to refresh his recollection in those areas at the time of his examination under oath, and noting that when he did respond to interrogatory responses and looked up pertinent information he provided the additional information he obtained.  Id. at ¶¶ 12, 18.  Abramyan further observes that when he was provided with

additional information in his examination under oath, like the phone records indicating that his brother had called at 2:23 a.m. on the morning of the loss, he admitted that such a call could have been made. Id. at ¶ 19.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). For summary judgement, the moving party (here, GEICO), bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "However, if the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden." In re Brazier Forest Prods. Inc., 921 F.2d 221, 223 (9th Cir. 1990). This applies here, as the GEICO does not bear the burden of proof at trial.

Once the moving party meets its initial responsibility, the burden then shifts to the opposing party (here, Abramyan) to establish a genuine dispute as to any material fact exists, that the contended material fact may affect the outcome of the case, and a reasonable jury could return a verdict for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986). A factual dispute must be shown by "cit[ing] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Still, the nonmoving party's showing must constitute

more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587. The opposing party's evidence is to be believed, and critically, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the nonmoving party's favor. Anderson, 477 U.S. at 255.

**ANALYSIS**

A. **Breach of Contract**

Whether GEICO breached its contract of insurance depends on whether Plaintiffs' theft claim was properly denied under the fraud provision contained in GEICO's policy. In order to void a policy for fraudulent misrepresentation the insurer must show 1) that the insured intended to deceive the insurer; and 2) that the deception was material. See Leasure v. MSI Ins. Co., 65 Cal. App. 4th 244, 248 (1998). An insurer's intent to deceive the insurer may be inferred as matter of law when the insured knows the statement is false and willfully makes it. Fresno Rock Taco, LLC v. Nat'l Sur. Corp., 2012 WL 3260418 at *10 (E.D. Cal. Aug. 8, 2012), see also Ram v. Infinity Select Inc., 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) (finding the requisite intent present when the insured admits he made a knowingly false statement with the intent that the insurer rely upon it). The materiality of the insured's alleged misstatements can also become a pure question of law when reasonable minds cannot differ as to such materiality. Cummings v. Fire Ins. Exch., 202 Cal. App. 3d 1407, 1417 (1998). "[T]he materiality requirement is satisfied if a false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." Fine v. Bellefonte Underwiters Ins. Co., 725 F.2d 179, 183 (2d Cir. 1984).

Because Abramyan's purported misrepresentations go to the heart of both the claim at issue (issues pertaining to the cost of the vehicle, where it was obtained and

Abramyan's telephone calls surrounding the incident) as well as to his underlying claim and litigation history (prior insurance claims and lawsuits in which he had been involved), the materiality of his statements in that regard cannot reasonably be controverted. As indicated above, however, in order to justify denying Plaintiffs' claim on grounds of fraud, GEICO must still show that Abramyan knew his statements were false and made them anyway. This requirement is not so easily satisfied.

According to Abramayan, his misrepresentations and omissions were good faith mistakes attributable to community customs, misunderstandings due to his unfamiliarity with English, and harmless errors that could have been corrected by information already in GEICO's possession. Examination of the transcripts of Abramyan's statements and EUO show repeated instances where Abramyan expressed a reluctance to discuss issues pertaining to his personal affairs, a concern that may have arisen from his upbringing in the Armenian area of the former Soviet Union.[5] Abramyan also indicated that in the Armenian community, paying cash for large purchases like automobiles is not uncommon, whereas such a practice would be considered unusual and even suspect in our community at large. Abramyan Decl., ¶ 2. Additionally, and even more importantly, the transcripts reveal that Abramyan frequently appeared to misunderstand the questions posed. He stated in his EUO that he had not authorized anyone to speak on his behalf (EUO, Ex. 3 to Coghlan Aff, 56:22-24), yet when played a recording of a prior statement readily admitted that he asked his brother's son Gevorg to speak for him because he was nervous and confused (id. at 65: 9-25) and had accordingly given Gevorg permission to report the theft (id. at 67:10-12). Further, when initially asked in his EUO when he last saw the subject BMW, for instance, Abramyan thought he was asked when he discovered that the vehicle had in fact been stolen. Id. at 43:22-45:10. Significantly, too, when asked about prior insurance claims, he initially denied any before clarifying upon further examination (and once he understood the question) that there had been several. Id. at 19:13-21:17.

---

[5] See, e.g., EUO, Ex. E to Coghlan Aff., 27:2-15; 79:1-80:12,

It should also be noted that Abramyan apparently revealed that he had both previously submitted insurance claims, and been involved in lawsuits, at the time he initially applied for insurance with GEICO (see Decl. of Kevin W. Harris, ECF No. 36-1, Ex. 2, Nos. 45, 47), a fact which does not comport with any attempt to mislead GEICO when he stated in his EUO that he had no prior litigation experience. EUO, Ex. E to Coghlan Aff., 22:2-7. Moreover, when Abramyan was shown documents that contradicted his initial recollection, like cell phone records from the night of the theft, he admitted that a call from his brother could have indeed been placed. Id. at 76:4-15. Finally, in written discovery initiated once Plaintiffs' lawsuit was actually initiated, Plaintiffs augmented their response once they had an opportunity to review their claims records.

While the omissions and misstatements that Abramyan appeared to have made were hardly insignificant, in weighing the propriety of summary judgment, the Court must weigh whether GEICO has unquestionably established as a matter of law that Plaintiff actually intended to deceive GEICO and further acted with an intent that GEICO rely upon his misstatements. Significantly, too, summary judgment may not be indicated on an intent to deceive basis if the insured can point to facts that may explain or clarify his alleged misrepresentations. Herbert v. State Farm Mut. Auto. Ins. Co., 362 F. Appx. 748, 750 (9th Cir. 2010).

As the above circumstances indicate, while Abramyan's conduct certainly raises serious concern, there is nonetheless doubt as to whether he in fact acted with fraudulent intent. Because all inferences, including inferences of credibility, must be resolved in Plaintiffs' favor as the party opposing summary judgment, summary judgment is simply not indicated upon this record. The Court simply cannot say that Abramyan's actions were undisputed, willful attempts to defraud GEICO.

To the contrary, Abramyan has raised arguably plausible reasons explaining the misrepresentations, with disputed facts therefore remaining as to his intent and credibility. Therefore, GEICO is not entitled to judgment as a matter of law. This does

not mean the Court is determining that the events occurring in this case were not suspicious, or that GEICO erred in following the SIU team's procedures as they probed the holes in Abramyan's story about how and where he bought the car, his communications with auto dismantlers, and his omissions of prior claims. It simply means as a matter of summary judgment, disputed facts remain. Therefore, GEICO's motion for summary judgment is denied as to Plaintiffs' breach of contract claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

In contending that Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as a matter of law, GEICO initially argues that because Plaintiffs' misrepresentations obviated any coverage under the fraud provision of its policy, their bad faith claim necessarily fails because Plaintiffs are not entitled to policy benefits in the first instance. Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1148-49 (1990). As indicated above, because this Court cannot make that determination on summary judgment, that preliminary argument fails.

GEICO nonetheless goes on to argue that Plaintiffs still cannot maintain a bad faith claim because its refusal to pay policy benefits in this first party case was not unreasonable under the circumstances. Frommoetheydo v. Fire Ins. Exch., 42 Cal. 3d 208, 214-215 (1986); Gourley v. State Farm Mut. Auto. Ins. Co., 53 Cal 2d 121, 127 (1973). Determining unreasonableness in this regard, even if the insurer is not liable for breach of contract, may hinge upon whether "an insurer denying or delaying the payment of policy benefit [does so] due to the existence of a genuine dispute with its insured as to the existence of coverage." Wilson v. 21st Century Ins. Co., 42 Cal. 3d 713, 723 (2007); citing Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co., 90 Cal. App. 4th 335, 347 (2001). The so-called "genuine dispute" doctrine allows for summary judgment in favor of an insurer on a bad faith claim where it is undisputed or indisputable that the insurer's denial of benefits was reasonable. Guebara v. Allstate Ins. Co., 237 F.3d 987, 999 (9th Cir. 2001). Summary judgment is, however, only appropriate "where, viewing the facts in the light most favorable to the

plaintiff, a jury could not conclude that the insurer acted unreasonably." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161-62 (9th Cir. 2002).

Here, for the same reasons outlined above with regard to Plaintiffs' breach of contract claim, it is at least conceivable that a jury could accept Abramyan's various explanations for the alleged omissions and misrepresentations identified by GEICO. Those triable issues preclude summary judgment as to Plaintiffs' claim for breach of the covenant of good faith and fair dealing just as they make it impossible to find in GEICO's favor as a matter of law on the breach of contract claim.

GEICO's concurrent claim that punitive damages associated with Plaintiffs' tort claim for bad faith be stricken also fails given the factual disputes presented by this matter, and the fact that the jury must decide whether those disputed facts justify punitive damages. See, e.g., Bankhead v. ArvinMeritor, Inc., 205 Cal. App. 4th 68, 77 (2012; Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc., 155 Cal. App. 3d 381, 387-88 (1984).

## CONCLUSION

For all the foregoing reasons, GEICO's Motion for Summary Judgment (ECF No. 24) is GRANTED in part and DENIED in part. Summary judgment in GEICO's favor is GRANTED as to Plaintiffs' Third and Fifth Causes of Action, for violations of California's Unfair Competition Law and Unruh Act, respectively, but is DENIED as to Plaintiffs' First Cause of Action, for breach of contract, and as to the Second Cause of Action, for breach of the implied covenant of good faith and fair dealing.

IT IS SO ORDERED.

Dated: December 30, 2018

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE